UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAZEL FALTESEK, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| | § | CIVIL ACTION 4:14-CV-01296 |
| v. | § | |
| | § | (Hon. David Hittner) |
| | § | |
| TASER INTERNATIONAL, INC. | § | |
| Defendant. | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S FRCP 12(B)(6) MOTION TO DISMISS

**TO THE HONORABLE COURT:**

1. COMES NOW, Plaintiffs, **HAZEL FALTESEK, Individually and as Representative of the Estate of JOE FRANK FALTESEK AND MARY HEINLEN, as Next Friend of JSF** ("Plaintiffs"), and files this Response in Opposition to the Defendant's FRCP 12(B)(6) Motion to Dismiss and in support thereof shows the following:

### I. BACKGROUND

2. This matter was initially filed in State District Court in Harris County, Texas. It was removed to this Court because there is complete diversity of citizenship. It has causes of action under the Wrongful Death and Products

Liability laws of the State of Texas. The Original Petition removed from State District Court has not been amended prior to the Defendant's Motion to Dismiss.

3. The Defendant TASER International, Inc. ("TASER") has filed a Motion to Dismiss all of the causes of action alleged by Plaintiffs in Plaintiffs' Original Petition (Dkt. 1-2) in this removed action pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, TASER moves for a more definite statement regarding Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(e).

## II PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

4. Plaintiffs' oppose the dismissal of all claims based on the pleadings of Plaintiffs' Original Petition (Dkt. 1-2) without first being afforded the opportunity to amend its State District Court pleadings to be compliant with the Federal Rules of Civil Procedure.

5. The claims as stated in the Plaintiffs' Original Petition (Dkt. 1-2) have sufficient facts to establish a plausible claim and any defects in the pleadings can be cured with amended pleadings. Pleadings must be construed so as to do justice. FRCP 8(e). A pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Yamaguchi v. United*

*States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir.1997). In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir.1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))

6. The Original Petition, even in its State District Court form, provides fair notice to the claims being asserted and states the grounds for which it rests. The Original Petition, paragraph 14, pleads the fact that Mr. Faltesek was shocked by a TASER X26 S/N x00-338321 and died. It is undisputed that TASER International, Inc. designs, manufactures and places into the stream of commerce the X26 product identified above. Paragraphs 16 and 18 of the Original Petition plead the fact that the X26 used on Mr. Faltesek did not function as it was designed to do and is advertised (marketed) as a non-lethal device (therefore inferred to be defective and unreasonably dangerous) and caused the death of Mr. Faltesek.

Identifying the specific X26 device used by serial number also indicates that it was an unmodified X26 produced by TASER International, Inc. The foregoing claims are the elements required to sustain a claim of Strict Products Liability, as properly cited in Section IV.B. of Defendant's Motion to Dismiss.

7. The specific claims of Manufacturing Defect, Design Defect, and Marketing Defect are further refinements of Strict Product Liability. These claims would be further supported through the process of discovery to become more detailed and specific. Paragraphs 17 and 18 of the Original Petition claim that the X26 lacked adequate safety mechanisms and adequate warnings and that it did not perform as designed. It also identifies that claims are being brought under Texas Civil Practice and Remedies Code Section 82.005. These foregoing facts along with the specific elements identified in Paragraph 6 of this response are sufficient to meet the plausibility, fair notice, and grounds for which the claims rest requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. RESPONSE TO ALTERNATIVE
### MOTION FOR MORE DEFINITE STATEMENT

8. Plaintiffs will submit to the Defendants alternative motion for a more definite statement by pleading more specifically the claims for product defects and marketing defects. Any facts related to advertisements and promotions will be in

support of a marketing defect claim and not specifically a false advertisement claim.

**A. PRODUCT DESIGN DEFECT**

9. The X26 CEW is designed with the ability to operate in two modes. The first mode is the discharge of wire guided probes that embed into the intended target and carry an electrical charge of 50,000 volts to that target. This is the mode in which the target is incapacitated, unable to exercise free will of its muscular control and loses the ability to control its motion. This mode is very effective in subduing the target and usually disables it after one application of charge. This mode provides the most utility of the product and generally completes its intended purpose of subduing the target in a non-lethal manner. The second mode is the drive stun mode, whereby the X26 CEW is placed in direct contact with the target and additional electric impulses are applied. This mode makes the X26 CEW "unreasonable dangerous as designed" because it doesn't subdue the target by disruption of muscular control like the first mode, it merely causes extreme pain and suffering of the target with the hope of causing enough pain that the target will comply. Many successive applications of charge can be applied without any visible physiological change to the target. The X26 CEW used on Mr. Faltesek was discharged at least 6 times. Five (5) times in the second mode, drive stun mode. Unfortunately, the drive stun mode has a cumulative invisible physiological

effect of causing two known conditions which can lead to sudden death. One condition known as excited delirium is often triggered by a target individual being restrained at the same time that multiple X26 CEW charges are being applied. The other condition known to occur is cardiac capture which is a disruption of cardiac rhythm causing cardiac arrest and sudden death. The ability to apply additional charges in drive stun mode is actually unnecessary to the utility of the product since it doesn't actually incapacitate the target in this mode. However, by using the drive stun mode, the risk of sudden death increases substantially by initiating excited delirium or cardiac capture. The design of the X26 CEW is such that its utility as a method of incapacitating its target is nearly exclusively vested in its embedded dart mode and the drive stun mode only makes it more dangerous and harmful to its intended target.

10. The X26 CEW would be a much safer product and hardly sacrifice any of its utility if it were designed with only the mode of operation that embedded the darts connected by wires to the device. This mode incapacitates its intended target with a single charge and affords the user(s) the chance to subdue the target. The drive stun mode should be eliminated altogether.

11. The X26 CEW has no safety mechanisms or design features which limit or separate by extended time interval the number of electrical charges that can be applied in drive stun mode. The best safety feature would be to eliminate the drive

stun mode altogether. An alternative safety mechanism would be to limit the drive stun mode to only be used when the wire and dart mode hadn't already been activiated. Another alternative safety feature would be to delay the activation of successive drive stun charges by a lengthy time delay to avoid quick successive application s of charge which initiates excited delirium or cardiac capture.

12. The absence of the foregoing design and safety features was a proximate cause of Mr. Faltesek's death. If the X26 CEW had features which limited the number of drive stun applications or didn't allow multiple drive stun applications after the wire and dart application of charge had already occurred, then the excited delirium for which the autopsy referred to or the cardiac capture, which the autopsy did not diagnose would never have happened and Mr. Faltesek would in all probability be alive today.

**B. PRODUCT WARNING DEFECT**

13. TASER International, Inc. ("TASER") should have reasonably foreseen the inherent risks to human life that their X26 CEW product posed. It is designed to apply 50,000 volts of electricity to a human target in a manner that would disrupt that humans muscular control to a point where it would be incapacitated and then the device could be used to apply numerous other shocks to that same previously incapacitated human, under the assumption that if the user makes it painful enough the target will comply. The disruption of human neuromuscular signals by

electrical shock is known to produce deadly affects to humans. The death penalty in several of the United States was historically carried out through electrocution. Simply designing a less deadly electrocution does not eliminate the risks. It may narrow the risks to a smaller subset of the population, such as the mentally or physically impaired, but it does not make it universally safe. Excited delirium and cardiac capture are two known risks to X26 CEW induced electrocution and both of these risks are heightened when the human target is impaired by a drug or medication that might be impairing their normal body function. It is reasonable anticipate that law enforcement or security personnel would use the X26 CEW on individuals in both the wire and dart mode and multiple times in the drive stun mode without knowing whether the target individual was impaired or not. The risk of sudden death is a possibility to humans that are the targets of the X26 CEW.

14. TASER failed to provide adequate warnings to the users of X26 CEW prior to Mr. Faltesek's death with instructions to refrain from applying numerous applications of drive stun charges to mentally or physically impaired individuals. These warnings should have specifically identified the mentally ill who are likely to be taking medications that could leave them in a condition that is especially vulnerable to numerous applications of electrical charge. These individuals might not be responsive to ordinary request to stop resisting, which tends to lead to a significant number of drive stun charges in a futile and extremely dangerous

attempt to get them to submit. These warnings should have stated in part; "Do not apply multiple charges to the mentally ill", "Do not apply multiple charges to individuals with known cardiac conditions", "Do not continue to apply multiple charges after the individual has fallen to the ground", "Do not continue to apply charges once the target is restrained". These warnings should also identify the risk of sudden death due to cardiac capture or excited delirium in such a way as to allow police and security force training programs to incorporate avoidance guidelines into their curriculum. Instead, any warnings provided were so general in nature and presented in such a way as to be overlooked or ignored by the users of the X26 CEW. These inadequate warnings only furthered the false sense of safety held by its users.

15. The failure to provide the foregoing warnings, in both content and in a manner which instilled urgency, bolstered a false sense of the X26 CEWs universal safety. The Police Officer who used the X26 CEW on Mr. Faltesek on April 13, 2012 disregarded the risk to Mr. Faltesek's life, because the warnings he was given didn't guide him to use caution in deploying his weapon. He disregarded the risk to Mr. Faltesek's life, because he was not adequately warned that his multiple applications of charge to the back of Mr. Faltesek's neck would pose any greater risk than the first wire and dart charge he administered. These inadequate warnings were a producing cause to Mr. Faltesek's Death.

## C. PRODUCT MARKETING DEFECT

16. The X26 CEW is designed, intended, and expected to produce multiple charges of 50,000 volt electricity into the bodies of its intended targets. Multiple applications of this charge are known to cause excited delirium and cardiac capture which both can lead to sudden death.

17. As the designer, manufacturer, and marketer of the X26 CEW, TASER International, Inc. should have invested the clinical trials and tests necessary to completely understand the risks involved in putting a 50,000 volt electrocution device intended to be used on humans on the market.

18. The X26 CEW used on Mr. Faltesek was marketed as a non-lethal device prior to its purchase. This method of marketing created a false sense of safety to both the ordinary users and the general public as to the true lethality of the X26 CEW. Police and Security forces believe that they can use the X26 CEW under any condition and it won't lead to serious injury or death of their target. The marketing should have included the circumstances in which death might occur and promote the product as low risk of lethality or lethal under limited circumstances.

19. Since the X26 CEW was only promoted and marketed as non-lethal and did not identify the circumstances in which it could become lethal, the users of the X26 CEW did not consider limitations in their use of the device and began using it on anyone they wanted to subdue without regard for their safety. Without identifying

the circumstances in which the X26 CEW becomes lethal, it creates an unreasonably dangerous condition of use.

20. That unreasonably dangerous condition was realized on April 13, 2012, when the Houston Police Officer used the X26 CEW on Mr. Faltesek. Mr. Faltesek was merely a mentally ill person under the influence of too much prescribed medication, who was in need of medical care and transport to a hospital. At least six (6) charges of the X26 CEW were applied and he died within minutes.

## IV. PRAYER

21. For the reasons stated above, Plaintiffs, HAZEL FALTESEK, et al., request that the Court deny the Defendant's, TASER International, Inc. FRCP 12(b)(6) motion to dismiss and grant Plaintiffs the opportunity to amend the "Original Petition" removed from state court to be compliant with the Federal Rules of Civil Procedure and specifically address the alternative request of the Defendant's to provide a more definite statement.

Respectfully Submitted,

/s/ Walter A. Medsger\_\_\_\_\_
Walter A. Medsger
State Bar No. 13898090
Federal ID No. 16721
4302 North Cook Circle
League City, Texas 77573
Telephone (713) 705-6632
Facsimile (281) 332-6210
wmedsger@cimarroninc.com
ATTORNEY FOR PLAINTIFFS

# CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the above and foregoing was served, in accordance with the Federal Rules of Civil Procedure, upon the following counsel on the 2nd day of June, 2014.

**Roger L. McCleary**
**BEIRNE,MAYNARD&PARSONS, L.L.P.**
1300 Post Oak Blvd., Suite 2500
Telephone: (713) 623-0887
Facsimile: (713) 960-1527
rmccleary@bmpllp.com


                                        */s/ Walter A. Medsger*
                                        Walter A. Medsger