**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HAZEL FALTESEK, et al.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | **CIVIL ACTION 4:14-CV-01296** |
| **v.** | § | |
| | § | **(Hon. David Hittner)** |
| | § | |
| **TASER INTERNATIONAL, INC.** | § | |
| **Defendant.** | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiffs, **HAZEL FALTESEK, Individually and as**

**Representative of the Estate of JOE FRANK FALTESEK  AND MARY**

**HEINLEN, as Next Friend of JSF** ("Plaintiffs"), and files this First Amended

Complaint in response to the Defendant's, **TASER INTERNATIONAL, INC.** ,

request for a more definite statement and this Court's Order.   Plaintiffs herein are

complaining of Defendant and for cause of action would respectfully show the

following:

**I. PARTIES**

1.      Plaintiff, HAZEL FALTESEK, Individually and as Representative of the

Estate of JOE FRANK FALTESEK, whose address is 526 Donnacorey, Houston,

Texas 77013.

2.      Plaintiff, MARY HEINLEN, as Next Friend of JSF, the sole minor child of

JOE FRANK FALTESEK.  MARY HEINLEN is the mother of JSF, whose

address is 7500 FM 1459 Rd., Sweeny, Texas 77480.

3.      Defendant, TASER INTERNATIONAL, INC. is a corporation engaged in

interstate commerce designing, manufacturing, and selling conductive energy

devices, specifically the **TASER Model X26, S/N x00-338321**.  TASER

International sells many of those devices in the State of Texas, and specifically in

this case to the Houston Police Department.  TASER INTERNATIONAL, INC.

may be served with process by certified mail to its corporate headquarters by

serving TASER International, Inc., 17800 N. 85th Street, Scottsdale, Arizona

85255.

4.      JOE FRANK FALTESEK, now deceased, was a 41 year old male residing

at 526 Donnacorey, Houston, Texas 77013.  His estate is represented by HAZEL

FALTESEK, Plaintiff.

## II. JURISDICTION

5.      This court has jurisdiction over this civil action because the amount in

controversy, without interest or costs, exceeds the sum or value of $75,000 and the

parties are citizens of different states.  Plaintiffs are residents of the State of Texas,

Harris County and Brazoria County, and Defendant is a corporation with its

principle place of business in the State of Arizona.  28 U.S.C. § 1332(a)(1).

## IV. VENUE

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## V. PROCEDURAL HISTORY

7.      This matter was initially filed in State District Court in Harris County, Texas.  It was removed to this Court by the Defendant because there is complete diversity of citizenship.   It has causes of action under Texas Civil Practice and Remedies Code, Section 71.002(b), Texas Civil Practice and Remedies Code, Section 71.021, and Texas Civil Practice and Remedies Code, Section 82.005.

8.      The Defendant TASER International, Inc. ("TASER") filed a Motion to Dismiss all of the causes of action alleged in Plaintiffs' Original Petition, pursuant to Federal Rule of Civil Procedure 12(b)(6) and in the alternative, TASER moved for a more definite statement regarding Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(e).

9.      This Court denied the motion to dismiss and granted the motion for a more definite statement and so ordered this Amended Complaint.

## VI. FACTS SUPPORTING CAUSES OF ACTION

10.     In the afternoon of April 13, 2012 JOE FRANK FALTESEK, hereinafter "Joe" or "Mr. Faltesek" , was at his home located at 526 Donnacorey in Houston,

Texas 77013.  He shares that residence with his mother, Hazel Faltesek, hereinafter

"Hazel", and her husband Johnny Faltesek, hereinafter "Johnny", who were both

present for the entire incident.

11.     Sometime around 3:00 P.M. Hazel called 911 for medical assistance for Joe

because she thought he had taken too much of the prescription medication he had

been prescribed for bipolar disorder.

12.     First responders from the Houston Fire Department arrived at the residence

and Hazel and Johnny met them in the front yard and discussed the situation with

them.  Joe remained in the house and first responders did not attempt to render aid

or engage him in any conversation.

13.     Within a few minutes Houston Fire Department first responders requested

that Hazel have Joe come outside, so she opened the front door of the home and

called Joe outside.  Joe complied and stepped onto the front porch/walk/drive area

of the front yard.

14.     At that time Houston Police Officers immediately intervened.  The moment

Joe stepped outside, he was grabbed by the officers, forced to the ground, and

shocked by a Conductive Energy Device TASER X26, S/N x00-338321, hereafter

X26 CEW.  There was never an attempt by the Police Officers or first responders

to detain Joe without force or ascertain his physical or mental condition prior to

using the X26 CEW.

15.     Two different methods of deploying the X26 CEW were used on Joe, the

dart and wire projectile was fired and the drive stun or contact method, with

multiple, at least six (6), applications of electrical charge.   Within minutes Joe

began having difficulty breathing went into cardiac arrest and he died in the

custody of Houston Police Officers while on route to the hospital.

16.     The X26 CEW employed on Joe did not function as a non-lethal device to

incapacitate and subdue as it is was designed to do.   Instead, this X26 CEW

inflicted injuries which caused the death of JOE FRANK FALTESEK.

17.     JOE FRANK FALTESEK'S death was caused by one or more of the

following wrongful acts of the Defendant, TASER International, Inc.: the product

design defect of the X26 CEW; the product warning defect of the X26 CEW; or the

product marketing defect of the X26 CEW.   TASER International, Inc. is liable to

the Plaintiffs for damages according to Texas law. TEX. CIV. PRAC. & REM.

CODE §71.002(b), TEX. CIV. PRAC. & REM. CODE §71.021, and TEX. CIV.

PRAC. & REM. CODE§ 82.005.

## A. PRODUCT DESIGN DEFECT

18.     The X26 CEW is designed with the ability to operate in two modes.  The

first mode is the discharge of wire guided probes that embed into the intended

target and carry an electrical charge of 50,000 volts to that target.  This is the mode

in which the target is incapacitated, unable to exercise free will of its muscular

control and loses the ability to control its motion.  This mode is very effective in

subduing the target and usually disables it after one application of charge.  This

mode provides the most utility of the product and generally completes its intended

purpose of subduing the target in a non-lethal manner.  The second mode is the

drive stun mode, whereby the X26 CEW is placed in direct contact with the target

and additional electric impulses are applied.  This mode makes the X26 CEW

"unreasonable dangerous as designed" because it doesn't subdue the target by

disruption of muscular control like the first mode, it merely causes extreme pain

and suffering of the target with the hope of causing enough pain that the target will

comply.  Many successive applications of charge can be applied without any

visible physiological change to the target.  The X26 CEW used on Mr. Faltesek

was discharged at least 6 times.  Multiple times in the second mode, drive stun

mode.  Unfortunately, both modes have cumulative invisible physiological effects

of causing two known conditions which can lead to sudden death.  One condition

known as excited delirium is often triggered by a target individual being restrained

at the same time that multiple X26 CEW charges are being applied.  The other

condition known to occur is cardiac capture which is a disruption of cardiac

rhythm causing cardiac arrest and sudden death.  The ability to apply additional

charges in drive stun mode is actually unnecessary to the utility of the product

since it doesn't actually incapacitate the target in this mode.  However, by using

the drive stun mode, the risk of sudden death increases substantially by initiating

excited delirium.   The design of the X26 CEW is such that its utility as a method

of incapacitating its target is nearly exclusively vested in its embedded dart mode

and the drive stun mode only makes it more dangerous and harmful to its intended

target.

19.     The X26 CEW would be a much safer product and hardly sacrifice any of its

utility if it were designed with only the mode of operation that embedded the darts

connected by wires to the device.  This mode incapacitates its intended target with

a single charge and affords the user(s) the chance to subdue the target.  The drive

stun mode should be eliminated altogether.

20.     The X26 CEW has no safety mechanisms or design features which limit or

separate by extended time interval the number of electrical charges that can be

applied in either mode.  The best safety feature would be to eliminate the drive

stun mode altogether.  An alternative safety mechanism would be to limit the drive

stun mode to only be used when the wire and dart mode hadn't already been

activated.  Another alternative safety feature would be to delay the activation of

successive charges by a lengthy time delay to avoid quick successive applications

of charge which increases the risk of initiating excited delirium or cardiac capture.

21.     The absence of the foregoing design and safety features was a proximate

cause of Mr. Faltesek's death.  If the X26 CEW had features which limited the

number of charge applications or didn't allow multiple drive stun applications after the wire and dart application of charge had already occurred, then the excited delirium for which the autopsy referred to or the cardiac capture, which the autopsy did not diagnose, but was likely occurring, would never have happened and Mr. Faltesek would in all probability be alive today.

## B. PRODUCT WARNING DEFECT

22.     TASER International, Inc. ("TASER") should have reasonably foreseen the inherent risks to human life that their X26 CEW product posed.  It is designed to apply 50,000 volts of electricity to a human target in a manner that would disrupt that humans muscular control to a point where it would be incapacitated and then the device could be used to apply numerous other shocks to that same previously incapacitated human, under the assumption that if the first charge failed one or more successive charges would succeed.   The disruption of human neuromuscular signals by electrical shock is known to produce deadly affects to humans.   The Defendant is also aware of numerous studies since 2005 that implicate the electrical charges produced by the X26 CEW in possible sudden cardiac distresses such as cardiac capture leading to ventricular fibrillation, especially when the darts are located in close proximity to the chest or heart.  Excited delirium is another known risk to X26 CEW induced electrocution and this risk is heightened when the human target is influenced by a drug or medication that might be impairing their

normal body function and they are being forcefully restrained.  It is reasonable to

anticipate that law enforcement or security personnel would use the X26 CEW on

individuals in both the wire and dart mode and multiple times in the drive stun

mode on both drug impaired and non-impaired individuals who are in the process

of, or already being restrained.   Thus making the risk of sudden death a possibility

to humans that are the targets of the X26 CEW resulting from either of its modes

of operation.

23.     TASER failed to provide adequate warnings to the users of X26 CEW prior

to Mr. Faltesek's death with instructions to refrain from direct targeting of the

chest or heart region of the body and avoid applying numerous applications of

drive stun charges to mentally or physically impaired individuals, especially while

being restrained.  These warnings should have specifically identified the mentally

ill who are likely to be taking medications that could leave them in a condition that

is especially vulnerable to numerous applications of electrical charge.  These

individuals might not be responsive to ordinary request to stop resisting, which

tends to lead to a significant number of drive stun charges in a futile and extremely

dangerous attempt to get them to submit.   These warnings should have stated in

part; "Avoid directly targeting the chest area near the heart", "Do not apply

multiple charges to the mentally ill", "Do not apply multiple charges to individuals

with known cardiac conditions", "Do not continue to apply multiple charges after

the individual has fallen to the ground", "Do not continue to apply charges once the target is restrained", "Use of the X26 CEW may cause ventricular fibrillation, cardiac arrest and sudden death".  These warnings should also identify the risk of sudden death due to cardiac capture or excited delirium in such a way as to allow police and security force training programs to incorporate avoidance guidelines into their curriculum.  Instead, any warnings provided were so general in nature and presented in such a way as to be overlooked as significant  by the users of the X26 CEW.  These inadequate warnings only furthered the false sense of safety held by its users.

24.     The failure to provide the foregoing warnings, in both content and in a manner which instilled urgency, bolstered a false sense of the X26 CEWs universal safety.  The Police Officer who used the X26 CEW on Mr. Faltesek on April 13, 2012 disregarded the risk to Mr. Faltesek's life, because the warnings he was given didn't guide him to use caution in deploying his weapon.   He disregarded the risk to Mr. Faltesek's life, because he was not adequately warned that the use of the X26 CEW could lead to injuries that cause sudden death.  These inadequate warnings were a producing cause to Mr. Faltesek's Death.

25.     The unreasonably dangerous condition created by the inadequate warnings was realized on April 13, 2012, when the Houston Police Officer used the X26 CEW on Mr. Faltesek.  Mr. Faltesek was merely a mentally ill person under the

influence of too much prescribed medication, who was in need of medical care and transport to a hospital.  The X26 CEW caused the death of Mr. Faltesek when at least six (6) charges were applied to him and he died within minutes.

## VII. WRONGFUL DEATH DAMAGES

26.     Plaintiffs Hazel Faltesek, Individually, and as representative of the estate of Joe Frank Faltesek, and Mary Heinlen, as the Next Friend of JSF, Minor, and as Heir of the Estate of Joe Frank Faltesek, deceased, respectfully request the following damages to be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate them:

> a. Plaintiffs' pecuniary loss from the death of Joe Frank Faltesek, including loss of care, maintenance, support, services, advice, counsel and contributions of pecuniary value that they would, in all reasonable probability, have received from Joe Frank Faltesek during their lifetime had he lived;

> b. The mental anguish, grief and sorrow Plaintiffs suffered in the past and will continue to suffer in the future as a result of Joe Frank Faltesek's death;

> c. Plaintiffs' damage to their parental relationships with their son and father, including the right to love, affection, solace, comfort, companionship, society, emotional support and happiness;

d. Plaintiffs' loss of monetary support due to the death of Joe Frank Faltesek they would, in all reasonable probability, have received from Joe Frank Faltesek during his lifetime had he lived; and

e. Attorney's fees and court costs.

## VIII. SURVIVAL DAMAGES

27.     Plaintiffs Hazel Faltesek and Mary Heinlen, as the Next Friend of JSF, Minor, and Heir of the Estate of Joe Frank Faltesek, deceased, respectfully request the following damages to be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate the heir, legal representatives and estate:

a. The physical pain and suffering Joe Frank Faltesek suffered prior to his death as a result of his injuries sustained from Defendant;

b. The mental anguish Joe Frank Faltesek suffered prior to his death as a result of his physical injuries sustained from Defendant;

c. The funeral and cremation and burial expenses incurred as a result of Joe Frank Faltesek's death;

e. Attorney's fees and court costs.

## IX. EXEMPLARY DAMAGES

28.     Defendant's conduct, when viewed from the standpoint of the actors at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Furthermore, Defendant's conduct illustrates not only an attitude of conscious indifference for the rights, safety and welfare of others, but also shows Defendant's actual and subjective awareness of the dangers of such conduct.

29.     Nevertheless, Defendant proceeded with a conscious indifference to the rights, safety or welfare of others, including Plaintiffs. Therefore, Defendant is liable for exemplary/punitive damages.

## X.CONDITIONS PRECEDENT

30.     All conditions precedent have been performed or have occurred as required by Federal Rule of Civil Procedure 9(c).

## XI. JURY DEMAND

31.     Plaintiffs demand a trial by jury on all issues.

## XII. PRAYER

32.     For the above reasons, Plaintiffs pray they have judgment against Defendant, with interest on the judgment at the legal rate, pre-judgment interest, costs of court and for such other relief, both in law and equity, to which Plaintiffs may show themselves justly entitled.

Respectfully Submitted,

/s/ Walter A. Medsger_____
Walter A. Medsger
State Bar No. 13898090
Federal ID No. 16721
4302 North Cook Circle
League City, Texas 77573
Telephone   (713) 705-6632
Facsimile    (281) 332-6210
wmedsger@cimarroninc.com
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served, in accordance with the Federal Rules of Civil Procedure, upon the following counsel on the 27th day of June, 2014.

**Roger L. McCleary**
**BEIRNE,MAYNARD&PARSONS, L.L.P.**
1300 Post Oak Blvd., Suite 2500
Telephone: (713) 623-0887
Facsimile: (713) 960-1527
rmccleary@bmpllp.com

                                        */s/ Walter A. Medsger*
                                        Walter A. Medsger